**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**KAREN M. WELZEL,**

> **Plaintiff,**

> **v.**

**RICHARD BERNSTEIN** *et al.*,

> **Defendants.**

Civil Action No.  03-1887 (ESH/JMF)

**MEMORANDUM OPINION**

This case was referred to me by Judge Huvelle to resolve all discovery disputes.

Currently pending and ready for resolution is Plaintiff's Motion to Compel Testimony Regarding

Sexual Harassment Claim of Brenda A. Pilon Against Richard Bernstein, and Memorandum in

Support and Plaintiff's Motion to Compel Inspection.[1]  For the reasons stated herein, the former

motion will be denied and plaintiff will be ordered to show cause why the latter motion should

not be denied.

**I.      FACTUAL BACKGROUND**

Plaintiff, Karen M. Welzel, was formerly employed as the Corporate Director of Human

Resources of defendant, RB Associates, Inc., a real estate ownership, management, and

development company operating in the Washington, D.C. metropolitan area.  In addition to filing

suit against RB Associates, plaintiff also names the following defendants: 1) Richard Bernstein,

the President and Chief Operating Officer of RB Associates, 2) James Martens, the Executive

---

[1] See explanation on page 5 as to why plaintiff will be deemed to have filed a motion to
compel inspection.

Vice President and Chief Financial Officer of RB Associates, and 3) Crawford Sherman, Vice

President of Hotel Operations of RB Associates.  Plaintiff claims that when she worked for RB

Associates, she was subjected to gender discrimination and that she was retaliated against when

she attempted to oppose this and numerous other discriminatory practices that she observed.[2]

## II.    PLAINTIFF'S MOTION TO COMPEL

Plaintiff alleges that on November 26, 2000, at a meeting between herself, Martens and

Wim Pastoor, the then-Vice President of Hotel Operations, regarding the company's newly

formed reservations office, Martens indicated that when he and Bernstein had previously visited

the office, "they saw two rows of black faces looking back at them."[3] <u>Defendant's Opposition to</u>

<u>Plaintiff's Motion to Compel Testimony Regarding Sexual Harassment Claim of Brenda A. Pilon</u>

<u>Against Richard Bernstein and Memorandum in Support</u> ("Defs. Opp.") at Exhibit 4, Deposition

of Karen Welzel, page 169.  Plaintiff claims that she cautioned Martens about making such

statements and on September 28, 2001, plaintiff sent Martens a three page memorandum about

the incident and copied Bernstein.  On December 7, 200, plaintiff was denied a pay increase as

---

[2] Specifically, plaintiff claims the following: 1) retaliation under 42 U.S.C. 1981 against all defendants, 2) retaliation under Title VII against RB Associates, 3) gender discrimination under Title VII against RB Associates, 4) retaliation under the DC Human Rights Act ("DCHRA") against all defendants, 5) gender discrimination under the DCHRA against defendants RB Associates, Bernstein, and Martens, and 6) discrimination under the Family and Medical Leave Act ("FMLA") against RB Associates.

[3] Although plaintiff ultimately conceded in her deposition that Martens only commented on having seen "two rows of black faces," in the First Amended Complaint, plaintiff initially claimed that Martens *stated* "that there were 'too many black faces' looking back at him" (First Amended Complaint ¶ 18) and in the Motion to Compel, plaintiff then claimed that "Martens told Welzel and Wim Pastoor, the V.P. of Hotel Operations, that he and Bernstein had visited the new operation and were repulsed by 'all those black faces' of the reservation agents." Plains. Mot. at 2.

well as one week of vacation, both of which had been promised earlier.  According to plaintiff, this was done in retaliation for her having written the memorandum.

On July 21, 2005, plaintiff deposed Bernstein.  During the deposition, plaintiff asked Bernstein questions regarding the circumstances surrounding the alleged retaliation and discharge of Brenda A. Pilon, a former General Manager for the Hotel Lombardy, one of RB Associates' properties.  In a suit brought eleven years ago, Pilon accused Bernstein of sexually harassing her and then firing her in retaliation for her having refused his advances.  Bernstein refused to answer these questions on the grounds of relevancy.  Pursuant to Rule 26 of the Federal Rules of Civil Procedure, plaintiff has now moved this court to compel this deposition testimony of  Bernstein as well as Martens as to the Pilon lawsuit.

### A.      Legal Standard

"For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).  As I have noted previously on several occasions, the court must consider certain factors prior to allowing the introduction of evidence relating to other similar "bad acts":

> Evidence of other "bad acts" is never admissible simply to
> establish a propensity to engage in similar acts.  Fed. R. Evid.
> 404(b).  Provided its relevance outweighs it tendency to prejudice
> the opponent of the evidence unfairly, evidence of other acts of
> discrimination or retaliation similar to the discrimination or
> retaliation charged have been admitted to show, for example,
> motive or intent. Miller v. Poretsky, 595 F.2d 780 (D.C. Cir.
> 1978); Spulak v. K Mart Corp., 894 F.2d 1150, 1155 (10th Cir.
> 1990); Herman v. National Broadcasting Co., 744 F.2d 604, 609
> (7th Cir. 1984); Jay Edwards Inc. v. New England Toyota
> Distributor, 708 F.2d 814, 824 (1st Cir. 1983), cert. denied, 104

> S.Ct. 241 (1983); <u>Hairston v. WMAT</u>A, 1997 WL 411946 (D.D.C.
> April 10, 1997); <u>Cardona v. Skinner</u>, 729 F. Supp. 193, 199
> (D.P.R. 1990).  <u>See also</u> <u>Dougherty v. Barry</u>, 604 F. Supp. 1424,
> 1439 (D.D.C. 1985) (other acts of retaliation probative that a
> custom or policy of retaliation existed). By the same token, only
> discrimination or retaliation of the same character and type as that
> is alleged is probative. To establish that a prior discriminatory act
> is probative of the intention or motive of the defendant, there must
> be some reason to believe that his motivation or intention in the
> acts in question was similar to his motivation or intention on the
> prior occasion. But, there is nothing in human experience which
> suggests that a person who is bigoted as to race is equally likely to
> refuse to accommodate a disabled person unless one wants to say
> that certain folks are "like that" and always act a certain way as to
> people who are different from them. But to say that is to draw the
> very inference the law never permits a finder of fact to draw.  Fed.
> R. Evid. 404 (a).

<u>White v. U.S. Catholic Conference</u>, 1998 WL 429842, at *5 (D.D.C. May 22, 1998).

Thus, plaintiff has the burden of establishing the relevancy of other bad acts by showing

that " there must be some reason to believe that his motivation or intention in the acts in question

was similar to his motivation or intention on the prior occasion." <u>Id.</u>

**B.    Analysis**

Information about the allegations made by Pilon, that she suffered sexual harassment and

then retaliation at the hands of Bernstein, is neither relevant in itself nor reasonably calculated to

lead to the discovery of admissible evidence as to what Martens said about "black faces" and

what Bernstein did, if anything, in retaliation for plaintiff's sending Martens the memorandum

about the incident.  How Pilon's claims of sexual harassment against Bernstein, based on

Bernstein's rejected sexual advances, arose and how the company addressed those claims has

nothing to do with the manner in which they addressed Welzel's concerns regarding her own

treatment by company officials and the treatment of other company employees when Welzel

4

obviously makes no claim that Bernstein sexually harassed her.  Even though both Pilon and

plaintiff claimed that they were retaliated against, the nature of their claims is quite different.

That RB Associates may or may not have fired Pilon following her rejection of Bernstein's

advances is not probative of how RB Associates and its senior officers, *other than Bernstein*,

responded to plaintiff's concerns about the following alleged incidents: 1) the comment,

discussed above, that  Martens made about the black employees comprising the reservation team,

2) a comment Martens made about the hiring of young, white, American males, 3) Martens'

decision to hire his daughter as the Assistant Controller at one of RB Associates' properties, 4)

RB Associates' decision not to install a time clock so that the hourly employees would be in

compliance with the wage and hour laws, 5) RB Associates' decision not to offer its employees

crisis counseling following the aftermath of the September 11, 2001 tragedy, 6) actions taken by

RB Associates following plaintiff's taking of medical leave, 7) actions taken by Sherman in his

supervisory capacity, 8) decisions made by RB Associates regarding the treatment of male versus

female employees, 9) RB Associates' decision to institute a reduction in force at one of its

properties, 10) a comment Sherman made about overweight people, and 11) plaintiff's final

performance review.  See Coles v. Perry, 217 F.R.D. 1, 10 (D.D.C. 2003) (holding, *inter alia*,

that evidence relating to an agency's response to a claim of discrimination is not relevant or

probative of an agency's response to a claim of retaliation; Morgan v. Federal Home Loan

Mortgage Corporation, 197 F.R.D. 12, 16-17 (D.D.C. 2000) (holding, *inter alia*, that evidence

that certain persons, other than those who made the hiring decision in the case before the court,

were implicated in the writing of racially derogatory graffiti or the sending of racially derogatory

e-mail is not probative of the fact that the hiring official was himself racially biased); White v.

<u>U.S. Catholic Conference</u>, 1998 WL 429842, at *5 (D.D.C. May 22, 1998) (holding, *inter alia*,

that evidence that an employer was sued for discrimination generally is not probative of whether

or not the employer had a propensity to discriminate based on a specific quality such as a medical

disability).  <u>See also</u> Lisa Marshall, <u>The Character of Discrimination Law: The Incompatibility of</u>

<u>Rule 404 and Employment Discrimination Suits</u>, 114 Y<small>ALE</small> L.J. 1063 (2005) (discussing the

tension between the need, in a Title VII case, to discern whether or not an employer has acted in

a similar discriminatory fashion in ths past with constraints of Rule 404 of the Federal Rules of

Evidence against the introduction of evidence of an employer's prior acts for the purpose of

proving the employer's propensity for discriminatory behavior).

As to Bernstein himself, the only specific allegations against him are that he approved an

increase in paid vacation for men but not for similarly situated women, that he "ratified and

acquiesced" in Martens' racist reference to "too many black faces" and in Martens' hiring of only

white males. First Amended Complaint at ¶¶ 66, 91-94.  The specific allegations against

Bernstein personally in the current case are hardly rendered more likely to be true by facts

concerning the settlement of a previous lawsuit based on Bernstein's alleged sexual behavior.

Moreover, as defendants correctly point out, plaintiff has the complaint in the Pilon

matter and can gain whatever information he wishes from it, Ms. Pilon, and any one else who

would have been a witness to what occurred between Pilon and Bernstein.  It nearly goes without

saying that plaintiff will have to find admissible evidence of the prior "bad" act before the

presiding judge in this case will permit any mention of it and before she concludes that its

probative value exceeds its tendency to unfair prejudice under Rule 403.  There may come a time

when that other evidence is assembled and there remains a need for Bernstein's additional

testimony.  Until then, there is none.  Thus, even if I were convinced that such testimony might

be theoretically discoverable, I would nevertheless prohibit the inquiry on the grounds that what

little probative force it might have is overwhelmed by its tendency to waste time and resources,

particularly when the information concerning the Pilon suit is known or easily available from

another source. Fed. R. Civ. P. 26(b)(2).

**III.     THE INSPECTION OF RB ASSOCIATES' OFFICES AND HOTELS**

The issue of the inspection of defendants' properties has not been briefed in the

traditional sense although the parties have filed letters with the court as per the court's

instructions.  Therefore, so that the court may now resolve the issue on the record, the letters

referenced below will be deemed to have been filed with the court and will be docketed as

follows.  Specifically, plaintiff's fax of July 28, 2005 and attachments (totaling nine pages) will

be deemed Plaintiff's Motion to Compel Inspection ("Plains. Mot.").  Defendant's fax of July 29,

2005 and attachments (totaling 7 pages) will be deemed Defendant's Opposition ("Defs. Opp.").

Finally, plaintiff's fax of August 2, 2005 (totaling 16 pages) will be deemed Plaintiff's Reply.

**A.     Legal Standard**

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, "[a]ny party may serve on

any other party a request . . . (2) to permit entry upon designated land or other property in the

possession or control of the party upon whom the request is served for the purpose of inspection

and measuring, surveying, photographing, testing, or sampling the property or any designated

object or operation thereon, with the scope of Rule 26(b)." Fed. R. Civ. P. 34(a).  Under Rule

26(b), "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the

claim or defense of any party . . . [and] [r]elevant information need not be admissible at the trial

if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."
Fed. R. Civ. P. 26(b)(1).

"[R]elevant inspections may be objected to on any basis that would support a Rule 26(c)
protective order; namely annoyance, embarrassment, oppression, or undue burden or expense."
McKesson Corporation v. Islamic Republic of Iran, 185 F.R.D. 70, 76 (D.D.C. 1999). When
faced with such objections, courts must balance the respective interests by weighing "'the degree
to which the proposed inspection will aid in the search for truth'" against the "'burdens and
dangers created by the inspection.'" Id. (citations omitted).

    **B.**    **Analysis**

On May 18, 2005, plaintiff noticed an inspection of RB Associates' headquarters and
several of it hotel lobbies. Plains. Mot. at 3. Apparently, plaintiff's counsel believed that he had
defense counsel's consent to such an inspection after the motions for summary judgment had
been decided. Id. at 1. It then appears that plaintiff's counsel was informed that the inspection of
RB Associates' headquarter had already taken place. Id. Plaintiff however disputes that he was
given the access he sought and now seeks the court assistance in compelling defendant to provide
such access as outlined in the notice of inspection. Id. Defendant counters that it did allow
plaintiff to inspect defendant's headquarters and that plaintiff was told to call several of the
hotels to arrange for site visits, which defendant contends that plaintiff did not do. Defs. Opp. at
1-2. Defendant also argues that plaintiff failed to raise this issue within the discovery time-frame
established by the court, that the notice was overbroad, that the information sought was
irrelevant, and that plaintiff merely seeks to harass and annoy defendants. Id. at 2-3.

Defendant's argument about relevance is most persuasive. Putting aside, for the moment,

defendant's willingness to allow plaintiff to visit the various hotel properties and headquarters, it

not immediately apparent to the court how such information is relevant to plaintiff's case.  Apart

from perhaps obtaining some limited information as to the makeup of defendant's employee

population, it is not clear what relevant information or information reasonably calculated to lead

to admissible information will be obtained from a tour of defendant's properties.  As I am not

even confident that plaintiff understands the necessity of showing why the site visit will yield

potentially relevant evidence, I will order plaintiff to show cause within ten days of the date of

this Memorandum Opinion why its motion should not be denied.[4]  Plaintiff had better explain as

precisely as possible why a site visit is crucial to this case.  Defendant may respond 10 days after.

An Order accompanies this Memorandum Opinion.


Dated:                                                          _____
                                                                        JOHN M. FACCIOLA
                                                                        UNITED STATES MAGISTRATE JUDGE


---

[4] Although plaintiff also argues that defendants never responded to their Rule 34 notice of inspection and therefore waived any objections they may have had, since the District Court Judge directed the parties to file letters with the court as to their positions on this issue, the court will give due consideration to the merits of the parties' positions.